UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARK N. VICORY,**    Case No. 1:12-cv-419

    **Plaintiff**    Beckwith, Judge
                                                    Wehrman, Magistrate Judge

    v.

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant**

**REPORT AND RECOMMENDATION THAT: (1) PLAINTIFF'S FIRST
ASSIGNMENT OF ERROR BE DENIED; (2) PLAINTIFF'S SECOND
ASSIGNMENT OF ERROR BE DENIED.**

This is a Social Security appeal filed by plaintiff, through counsel, pursuant to 42 U.S.C. § 405(g) and § 1383. On appeal, two issues are presented: (1) whether the administrative law judge's ("ALJ") finding concerning plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence because the ALJ did not give proper weight to his treating physician's opinion; and (2) whether the ALJ's finding concerning plaintiff's RFC is not supported by substantial evidence because the ALJ did not give proper weight to plaintiff's psychiatrist's opinion. Doc. 6 at 1.

**I.**

Plaintiff Mark N. Vicory filed an application on February 12, 2009, for a period of disability and disability insurance benefits. He alleged a disability onset date of October 16, 2008, due to back pain and psychological issues. (Administrative Transcript ("Tr.") 9, 11-12). He was forty two years old at the time of the alleged disability. (Tr. at 20). After his claims were denied initially and upon reconsideration, plaintiff requested a hearing before an ALJ. (Tr.

1

9, 22).  On December 2, 2010, ALJ Amelia G. Lombardo held an evidentiary hearing at which plaintiff, represented by counsel, Marilyn Dunoff, and vocational expert, Brian Womer, testified. (Tr. 29-75).

On March 4, 2011, ALJ entered her decision denying plaintiff's claim.  (Tr. 9-21).  In response, plaintiff requested Appeals Council review of the ALJ's decision.  (Tr. 4).  On April 12, 2012, the Appeals Council denied review, making the ALJ's decision the defendant's final determination.  (Tr. at 1).

The ALJ's "Findings of Fact and Conclusions of Law" were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2011.

2. The claimant appeared to have engaged in substantial gainful activity since his alleged onset date of October 16, 2008….(20 CFR 404.1571 *et seq.*)

   ……………………..

3. Through the last date insured, the claimant had the following severe impairments: residual effects of lumbar surgery and lumbar degenerative disc disease; cervical degenerative disc disease and residual effects of surgery; obesity; depression (20 CFR 404.1520(c)).

   ……………………..

4. Through the last date insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   ……………………..

5. After careful consideration of the entire record, the undersigned finds that the claimant has residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: occasional stooping, crouching, and crawling; occasional overhead reaching bilaterally; must be able to change positions between sitting and standing every thirty minutes, is limited to unskilled work.

   ……………………..

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

……………………..

7. The claimant was born on February 5, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
……………………..

11. The claimant was not under a disability, as defined in the Social Security Act, from October 16, 2008, the alleged onset date, through June 30, 2011, the last date insured, and up until the present time (20 CFR 404.1520(g)).

(Tr. 11-21). In short, although the ALJ found that plaintiff could not perform any past relevant work, she concluded that there were jobs available in significant numbers in the national economy that plaintiff could perform. (Tr. 19-21).

On appeal to this Court, plaintiff makes two arguments, each time asserting that the ALJ's mistake rendered her opinion unsupported by substantial evidence. First, plaintiff argues that the ALJ failed to properly consider the opinion of plaintiff's treating physician.. Doc. 6 at 13-17. Secondly, plaintiff argues that the ALJ erred in determining that plaintiff's psychiatrist was not a "treating physician" as defined by the Social Security Act, resulting in the ALJ failing to give proper weight to the psychiatrist's opinion. Doc. 6 at 17-20.

## II.

The Court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). To determine whether substantial evidence exists, the Court should consider the "record as a whole." *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). In conducting the review, the Court may not "focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." *Id.* If substantial evidence supports the ALJ's denial of benefits, the Court must defer to that finding, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citation and internal quotations omitted).

In determining whether a claimant is disabled, the Social Security Administration ("SSA") employs a five-step sequential inquiry: at Step 1, the SSA asks whether the claimant is still performing substantial gainful work; at Step 2, the SSA asks whether one or more impairments are "severe;" at Step 3, the SSA examines whether the claimant's impairments, singly or in combination, meet or at least equal a listing in the SSA's Listing of Impairments; at Step 4, the SSA determines whether the claimant can perform his past relevant work; and finally, at Step 5, if it is determined that the claimant cannot perform his past relevant work, the burden of proof shifts to the SSA to determine whether a significant number of other jobs exist in the national economy that the claimant can perform. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

### III.

The ALJ determined that plaintiff failed to meet Step 3 because he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 11-12). To support her finding, the

ALJ relied upon the evaluations of two psychologists, as well as plaintiff's medical records and his own testimony. (Tr. at 11-12, 563-66 754-67, 518-24). Plaintiff does not contest the ALJ's findings in Step 3. When a claimant fails to satisfy Step 3, the ALJ's analysis proceeds to Step 4. *Combs*, 459 F.3d at 643.

     Before moving to Step 3, however, the ALJ must determine the claimant's RFC. 20 C.F.R. 404.1520(e). The RFC assessment is used to determine whether the claimant can perform past relevant work at step four or, in the alternative, whether there are a significant number of jobs available for the claimant in the national economy at Step 5. *Id.* The ALJ determined that plaintiff could perform "light" work activity subject to certain limitations. (Tr. at 16). In supporting this finding, the ALJ cited several sources, including medical records and physician's reports. (Tr. at 16). She pointed to an evaluation by a physician who examined plaintiff in May 2009 on behalf of the BDD, who opined that plaintiff could perform "light" work. (Tr. at 16, 572-78). The physician believed plaintiff could lift up to twenty pounds, stand and walk as much as six hours during any given workday, and use his hands and feet. (Tr. at 16, 572). The ALJ also cited a September 2009 physical consultative examination conducted by Phillip Swedberg, M.D. (Tr. at 17). Based on the findings of this examination, plaintiff appeared capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, pushing, pulling, lifting, carrying heavy objects, and handling objects. (Tr. at 17, 747). In addition, the ALJ noted that an August 2010 EMG revealed no significant electrodiagnostic abnormalities, no definitive electrophysiological evidence of acute or chronic lumbosacral radiculopathy, and no evidence of more peripheral neuropathic process. (Tr. at 17, 969). Although plaintiff developed cervical degenerative disc disease and had a fusion performed in October 2010, the ALJ stated

that "[t]here is no evidence that this procedure did not result in an improvement in the claimant's condition." (Tr. at 17).

Based on this medical evidence, the ALJ found that it is "reasonable to conclude that [plaintiff] would be limited to no more than light exertion work." *Id.* The ALJ included postural and reaching limitations to address any lack of mobility that could have resulted from plaintiff's fusion surgeries, and a "sit/stand limitation" was included to address his potential pain. *Id.* In addition to his physical impairments, the ALJ also determined that plaintiff had a mental impairment that could limit his functional ability to work. (Tr. at 17). Initially, in April 2009, a BDD psychologist found that plaintiff had no severe mental impairments. (Tr. at 17, 553). Consistent with that finding, a March 2009 psychological consultative examiner found plaintiff to have no more than mild limitations. (Tr. at 17, 523-24). However, in September 2009, a RFC assessment by Jennifer Swain, PsyD. showed that plaintiff had a severe mental impairment. (Tr. at 17, 770). Despite this impairment, however, the assessment stated that plaintiff "would be able to sustain routine tasks, which are commensurate with any physical limits, in a setting where there are no strict production demands and duties are relatively static." (Tr. at 17, 770). The assessment noted that plaintiff would be able to interact with others under appropriate circumstances. *Id.* Finally, the ALJ noted that plaintiff did not claim a psychological impairment on his initial application. (Tr. at 17, 770). Moreover, plaintiff did not start receiving treatment by a mental health professional until after his application for reconsideration was denied, and even then he was only seen monthly. (Tr. at 17, 852). Nonetheless, the ALJ's RFC determination held that plaintiff should be limited to unskilled work because, "it is reasonable to conclude that depression as a result [of plaintiff's] physical problems could result in moderate limitations." (Tr. at 18).

6

In addition to medical opinions and records, the ALJ also analyzed plaintiff's credibility in determining his RFC.  The ALJ noted discrepancies between plaintiff's assertions and the objective medical evidence regarding "the intensity, persistence, and limiting effects of his symptoms."  (Tr. at 16).  For example, plaintiff claimed that he was unable to peel potatoes, could not lift over five pounds, felt sharp pain when twisting, bending, and reaching, had pain in his hands and feet, had debilitating pain related to his motor functions that compromised his and others' safety,, and sometimes used a walker.  (Tr. at 15, 164, 16, 47).  However, in a psychological examination, plaintiff related that he engages in daily activities, including socializing, grocery shopping, watching television, checking email, reading the newspaper, and talking on the phone, which tends to contradict his assertions regarding his severe physical limitations.  He even reported raising his children.  (Tr. 16, 523).  Furthermore, the ALJ noted that the record does not support his claim that he requires a walker nor does it contain evidence that he needed the cervical collar he wore to the hearing.  (Tr. at 16).   In short, the ALJ found that plaintiff's claim that he was precluded from all work activity was not supported by objective evidence.  (Tr. at 16).

After determining plaintiff's RFC, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. at 19-20).  The analysis moved to Step 5 where the ALJ had to prove that a significant number of jobs in the national economy existed that plaintiff could perform consistent with his RFC.  *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).  Here, because plaintiff had limitations not accounted for in the grid, the ALJ relied upon testimony from Brian Womer, a vocational expert, who testified that there are a significant number of jobs available that plaintiff could perform.  (Tr. at 20); *see Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).  The vocational expert testified that an individual with plaintiff's profile,

including age, education, work experience, and residual functional capacity subject to limitations, could perform work existing in the regional economy, including as a mail clerk and small parts assembler. (Tr. at 20, 65-67). Based upon the vocational expert's testimony, the ALJ determined that there are a significant number of jobs in the national economy that plaintiff could perform. (Tr. at 20).

## A.

In his first assignment of error, plaintiff argues that the ALJ improperly dismissed a treating physician's opinion. Doc. 6 at 14. On several occasions, Dr. Boyd, plaintiff's primary care physician, reported that plaintiff was unable to work due to his back impairment. (Tr. 512, 582, 971-76). Specifically, Dr. Boyd opined that plaintiff could not perform even sedentary work on a sustained basis, and that his prognosis was poor considering the amount of pain he endured post-surgery. (Tr. 972-976). Plaintiff argues, however, that the ALJ never properly considered Dr. Boyd's opinion, as she dismissed it because Dr. Boyd failed to show that plaintiff's impairments were not permanent. *Id*. Plaintiff contends that the opinion of treating physician Dr. Boyd should have been given controlling weight, or at least great weight. Doc. 6 at 13. As a result, plaintiff maintains that the ALJ's RFC finding was not supported by substantial evidence. Doc. 6 at 13-17.

Plaintiff's first assignment of error is unavailing. First, plaintiff's contention with the ALJ's apparent requirement that plaintiff's impairments be "permanent," instead of the using the definition of "disability" as found in 20 C.F.R. § 404.1505 results from a misunderstanding. When the ALJ analyzed Dr. Boyd's opinion, she was not determining whether plaintiff met the first step of the inquiry; rather, the ALJ was determining plaintiff's RFC and whether plaintiff was precluded from all work activity. (Tr. at 17-18). The ALJ assumed, without discussion, that

8

plaintiff met the first step of the five-step inquiry. (Tr. at 11). Therefore, plaintiff's argument that Dr. Boyd's opinion should confirm that plaintiff met the first step is irrelevant.. *Id.*

Secondly, the record shows that the ALJ properly considered Dr. Boyd's opinion. The ALJ must "evaluate every medical opinion and consider the following non-exhaustive factors in deciding what weight to give each opinion: examining relationship, treatment relationship, the extent to which medical signs and laboratory findings support the opinion, the consistency of the opinion with the record as a whole, and the specialization of the doctor rendering the opinion." *Poe. v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009). A treating physician's opinion is given controlling weight if "the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for rejection." *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987).

Here, in March 2009, Dr. Boyd stated that plaintiff was "presently unable to work," and had trouble "peeling potatoes." (Tr. at 512). Later, in November 2010, Dr. Boyd opined in a questionnaire that plaintiff could not work at his old job, a determination that the ALJ does not dispute. (Tr. at 19-20, 972). Additionally, although Dr. Boyd indicated that plaintiff could not perform work on a sustained basis, in that same questionnaire, Dr. Boyd stated that he did not know whether any of plaintiff's limitations had lasted or could be expected to last for twelve months. (Tr. at 974). Dr. Boyd also stated that plaintiff could not lift ten pounds, and could not sustain any activity for a regular work day, including sitting, standing, and grasping. (Tr. at 975-76). However, Dr. Boyd's opinions were contradicted by a physician's evaluation in May 2009

that showed plaintiff could perform "light" work, lift up to twenty pounds, sit and stand normally for six hours in an eight-hour workday, and did not have loss of function in his hands and feet. (Tr. at 16, 572-78). Medical reports from 2010 also contradicted Dr. Boyd's opinion. (Tr. at 969).

The ALJ determined that Dr. Boyd's opinion was conclusory, as it stated neither the impact of plaintiff's impairments over a twelve-month period, nor his long-term prognosis and therefore did not show that plaintiff was precluded from all work activity. (Tr. at 18-19). In sum, the ALJ properly considered Dr. Boyd's opinion in determining plaintiff's RFC. Therefore, Plaintiff's first assignment of error should fail.

**B.**

In his second assignment of error, plaintiff argues that the ALJ improperly dismissed the opinion of plaintiff's treating psychiatrist Dr. Dueno, which stated that plaintiff could not perform the mental demands of competitive work. Doc. 6 at 17.

In a November 2010 questionnaire, Dr. Dueno marked that plaintiff's psychological issues would create only moderate or moderately-severe limitations, other than their effect on his ability to exercise acceptable judgment, which Dr. Dueno marked would be severely limited. (Tr. at 992-93). , Dr. Dueno also stated that plaintiff was hearing voices and was unable to work. (Tr. at 994). Plaintiff notes that, in January 2010, Dr. Dueno found his concentration fair, and his thought "process/content" preoccupied. (Tr. at 854); Doc. 6 at 19.

Contrary to plaintiff's arguments, Dr. Dueno's opinion was not supported by substantial evidence with respect to the record as a whole. First, as state previously, plaintiff did not claim a psychological impairment on his initial application,, did not begin treatment by a mental health professional until after his application for reconsideration was denied, and even then was only

seen monthly. (Tr. at 770, 852). Although in April 2009 a BDD psychologist found plaintiff to have no severe mental impairment (Tr. at 518), a subsequent assessment in September 2009 concluded that plaintiff did appear to have severe mental impairments. (Tr. at 770). However, despite this change, the later assessment noted that plaintiff still had significant residual capacity; specifically, he would be able to sustain routine tasks in a setting where there no strict production demands and duties are relatively static, and he could interact with others appropriately for brief, superficial exchanges. *Id.* Also, to account for the fact that plaintiff's depression could result in limitations on his concentration, persistence, and pace, the ALJ noted that plaintiff's RFC assessment limited him to unskilled work. (Tr. at 18).although plaintiff points to a January 2010 treatment note from Dr. Dueno showing that plaintiff's concentration was fair (Doc. 6 at 19), a March 2010 treatment note from Dr. Dueno undercuts this assertion, as it shows a normal mental status examination, including normal psychomotor activity, focused attention, and a logical thought process. (Tr. at 844).

Plaintiff also argues that Dr. Dueno's opinion is supported by treating counselor Martha Ann Cordasco's notes. Doc. 6 at 19. Plaintiff saw Dr. Dueno fairly infrequently, while most of his treatments came from Cordasco, a social worker. (Tr. at 838-43, 846-55). While it may be the case that Cordasco's notes are supportive, the regulations "clearly outline who can be an acceptable medical source and social workers are not included." *Boyett v. Apfel*, 8 F. App'x 429, 433 (6th Cir. 2001); 20 C.F.R. § 404.1513(a)(3). Nonetheless, the ALJ properly found the record as a whole contradicted the social worker's opinion. First, the social worker gave plaintiff Global Assessment of Functioning ("GAF") scores in the 40s, indicating impairment in reality testing or communication. (Tr. at 18, 849, 851). However, these scores are unsupported by the treatment notes from Dr. Dueno's office and inconsistent with activities of daily living plaintiff

11

reported to other sources. (Tr. at 19, 843-45, 770). Accordingly, the ALJ properly determined that the "opinions describing disabling psychological symptoms will be given little, if any weight." (Tr. at 19).

In sum, regardless of whether Dr. Dueno is considered a treating or non-treating physician, Dr. Dueno's opinion is not supported by substantial evidence of the record as a whole. As such, the ALJ did not give improper weight to Dr. Dueno's opinion and his second assignment of error should fail as well.

## IV.

For the reasons explained herein, **IT IS RECOMMENDED THAT:**

1. Plaintiff's first assignment of error be **DENIED;**

2**.** Plaintiff's second assignment of error be **DENIED;**

3. The ALJ's non-disability finding be affirmed; and

4. This case be closed.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to

another party's objections within fourteen days of being served with a copy of those objections.

Fed. R. Civ. P. 72(b)(2).

DATE: March 13, 2013                               J. Gregory Wehrman_____ __
                                                   J. Gregory Wehrman
                                                   United States Magistrate Judge